In re Constance R. **SNODGRASS**, as Special Administratrix of the Estate of Michael P. Snodgrass, Deceased,

v.

Wayne Lee **NELSON** et al.

Civ. No. 72–1038.

United States District Court, D. South Dakota.

Jan. 11, 1974.

Stanley E. Siegel and Murray Ogborn, Aberdeen, S. D., for plaintiff Snodgrass.

Richard H. Battey, Redfield, S. D., for defendant Nelson.

Ellsworth E. Evans, Sioux Falls, S. D., for defendants Shows, Ramey and Seminole Transport Lines.

John B. Shultz, Sioux Falls, S. D., for defendants Bennie Benjamin and Petroleum Carriers, Inc.

## MEMORANDUM DECISION

BOGUE, District Judge.

This is a wrongful death action which was tried to the Court. It arises out of a motor vehicle accident that occurred at a point approximately four miles south of Redfield in Spink County, South Dakota, on January 24, 1972, at approximately 2:00 p. m. As a result of this accident, Michael Snodgrass was killed. The action is brought for the benefit of his surviving wife and three year old child.

On the afternoon and evening of Friday, January 21, 1972, it started raining in an extensive area in South Dakota. The location of the accident, the subject of this litigation, was in this area. This rain froze on the highways leaving a sheet of glare ice. In addition, the rain turned to snow the following day and accompanied by high winds engulfed the area in a snowstorm, continuing throughout Monday the 24th of January.

The road on which the accident occurred, U. S. Highway 281, runs in a northerly and southerly direction. However, at the point of the accident the highway angles somewhat toward the northwest and southeast. There is a substantial hill, the crest of which was some 500 to 600 feet to the north of the place of the impact. The highway, which is blacktop and approximately 26

feet wide with little or no shoulders, was covered with ice. A strong northwesterly wind was blowing snow across the highway, reducing visibility.

A Seminole truck was headed north upon this highway, driven by Fred M. Shows, with Charles A. Ramey as the driver in charge. This truck lost traction (spun out) on the icy highway as it was going up this rather steep hill. It stopped on its own side of the highway and backed down a short distance where it came to a stop. These drivers made no attempt to put out any kind of warning devices, such as flares or reflectors, but did put on several flashing lights which are located on various parts of the truck and trailer along with the regular headlights of the truck. The Seminole truck was some 500 to 600 feet from the crest of the hill. It was at all times on its own side of the highway. Some distance to the south of this truck was a "no passing" sign. The yellow lines were obscured by the ice and blowing snow.

After a few minutes a petroleum carrier truck driven by Mr. Benjamin, also traveling north, came up behind the Seminole truck and before it could get stopped, had to enter the west lane of traffic to a point alongside the Seminole truck. The petroleum carrier truck then backed southward to a point in its own lane of traffic, 25 to 30 feet behind the Seminole truck. The petroleum carrier truck also had its headlights on along with its flashing lights. Mr. Benjamin did attempt to place reflectors on the highway behind his truck but not to the front, but was unable to do so due to the strong wind.

Michael Snodgrass was riding in his motor vehicle, a Ford Maverick, which was being driven by his wife, Constance R. Snodgrass. Another passenger in the car was Diane Barkley, now Mrs. Diane Raba. Michael and Constance Snodgrass and Miss Barkley had left Geddes, South Dakota, enroute to Aberdeen, South Dakota, on the day of the accident at about 9:00 a. m. Upon reaching Corsica, South Dakota, they placed a call to the Highway Patrol to determine what the road was like going north on U. S. 281. They were told the roads were passable and they proceeded north.

As the deceased, his wife and passenger arrived at the scene, they stopped at a distance back of the trucks. The reason for stopping was to decide what they were going to do. As they were pondering this decision they saw a car and a bread truck proceed out and around the vehicles and over the top of the hill. They decided, upon seeing the car and the bread truck go over the hill, that they could make it. They decided to get as far to the west side of the road as possible and thus there would be sufficient room for a vehicle approaching from the north to pass between them and the trucks. Constance Snodgrass then started the Snodgrass vehicle up the hill on the right side of the road until she reached a point where she would have to pass the trucks, at which time she pulled over to the left side of the highway. At a point in the highway approximately opposite the Seminole truck the Snodgrass vehicle spun out. At this time the deceased and Diane Barkley got out of the car and assisted in trying to push the vehicle over the hill. The Snodgrass car was, of course, headed in a northerly direction and was as far to the west side of the road as it could get on the highway in order to get additional traction and to provide sufficient room so that a vehicle could pass between it and the stalled trucks. There was testimony that there was a distance of 12 to 15 feet between the right side of the Snodgrass vehicle and the left side of the Seminole truck. About this time four persons in a following vehicle came up and assisted in the pushing of the Snodgrass vehicle. Michael Snodgrass was on the right side of his car either pushing on the wheel well or door handle. At this moment, the defendant, Wayne Lee Nelson, driving his motor vehicle in a southerly direction, came over the brow of the hill.

On this Monday morning Mr. Nelson had traveled this very same stretch of

road, as he had done on numerous previous occasions, going north to work in Redfield, South Dakota. Mr. Nelson's vehicle was a late model Buick equipped with studded snow tires. Mr. Nelson knew that the hill had been icy for days. As he came over the top of the hill, he was suddenly confronted with the Snodgrass car and the stalled trucks in front of him, 400 to 500 feet away by his own testimony. Mr. Nelson testified his speed to be 25 to 35 miles per hour when he first spotted the vehicles. He testified that he applied his brakes, blew his horn, and tried to turn. Both Mr. Shows and Mr. Ramey testified that they estimated Mr. Nelson's speed to be between 50 to 55 miles per hour. It was also disputed as to whether or not Mr. Nelson blew his horn, as no witness could testify as to their remembering it; although none could testify that the Nelson horn had not been blown. There was also testimony by Mr. Nelson that he attempted to turn his vehicle into the ditch and that his vehicle went into a skid.

In any event, the Nelson vehicle first struck the right front corner of the Snodgrass car and at some point probably also struck Michael Snodgrass. After the impact between the Nelson motor vehicle and the Snodgrass motor vehicle, the Nelson vehicle careened toward the southeast where the left side of the Nelson motor vehicle struck the left front corner of the Seminole truck. Following this impact, the Nelson motor vehicle traveled in a southwesterly direction impacting with two other individuals and ended up in the west ditch. When the Nelson motor vehicle came to a stop in the west ditch, it was discovered that the body of the deceased was underneath it.

Constance R. Snodgrass, as Special Administratrix of the estate of Michael P. Snodgrass, deceased, brought an action against Wayne Lee Nelson, Fred M. Shows, Charles A. Ramey, Seminole Transport Lines, Inc., Bennie Benjamin and Petroleum Carriers, Inc., for wrongful death of the decedent, Michael P. Snodgrass for alleged negligence of the defendants and requesting damages of Seven Hundred and Seventy-Five Thousand Dollars ($775,000.00), together with costs.

The defendant, Wayne Lee Nelson, answered alleging contributory negligence and assumption of risk on the part of the plaintiff, Constance Snodgrass and the deceased Michael Snodgrass. A counterclaim was filed by Mr. Nelson against the plaintiff claiming damages in the amount of Thirty Thousand Dollars ($30,000.00) for property damage and personal injuries. Mr. Nelson also filed a cross claim for contribution and indemnity as against the other defendants. Constance Snodgrass was joined in the case as a Third Party Defendant by Wayne Lee Nelson in which it was alleged that in the event it be held that the Defendant Wayne Lee Nelson be liable herein, that there be contribution as against the said Constance R. Snodgrass.

It is further alleged by the Defendant Wayne Lee Nelson that by virtue of the negligence of the said Constance R. Snodgrass in driving the Snodgrass motor vehicle, the negligence is imputed to the deceased, which bars his recovery herein. In other words, a joint venture existed between the deceased and his spouse.

The other defendants, each individually, answered also alleging contributory negligence and assumption of risk on the part of the plaintiff, Constance Snodgrass, and the deceased, Michael Snodgrass. These defendants further allege in answer to the cross claim of the other defendants that if it be found that they were in any way at fault for the death of the decedent, such fault was so slight in comparison to the negligence of the other defendants as to render inequitable an equal distribution of such fault among all of the defendants. Thus, the relative degrees of fault, if any, of these defendants and all other defendants, should be considered in determining the pro rata share of these defendants in any common liability unto the plaintiff herein.

■ The first issue this Court will decide is the issue raised by Mr. Nelson in his counterclaim wherein he alleges negligence on the part of the plaintiff and the plaintiff's decedent in the operation of the Snodgrass vehicle proximately causing damage to Mr. Nelson in the amount of Thirty Thousand Dollars ($30,000.00). This Court finds that the negligence of Mr. Nelson was greatly more than slight when compared with the negligence of the plaintiff and the plaintiff's decedent and thus recovery is denied Mr. Nelson for his counterclaim by S.D.C.L. 20-9-2 (1967). There is no doubt but that the plaintiff and the plaintiff's decedent were negligent. They were, for instance, in violation of S.D.C.L. 32-26-35 (1970) which states that "[n]o vehicle shall be driven on the left side of the roadway when approaching or upon the crest of a grade . . . where the driver's view is obstructed within such distance as to create a hazard in the event another vehicle might approach from the opposite direction." Mr. Nelson was also negligent in that he was in violation of S.D.C.L. 32-25-3 (1967) which states that one must drive his vehicle at a speed reasonable under the circumstances.[1] Under South Dakota law violation of a statute is negligence as a matter of law. Weeks v. Prostrello Sons, Inc., 84 S.D. 243, 169 N.W.2d 725 (1969).

■ ■ Thus the comparative negligence statute must be utilized in determining this issue. Under South Dakota law the slight comparative negligence of the plaintiff is to be compared with the negligence of the defendant in each particular case. Crabb v. Wade, 84 S.D. 93, 167 N.W.2d 546 (1969). South Dakota law does not spell out any particular rule of thumb to be applied in regards to its comparative negligence statute; but rather the result must always depend upon the circumstances of the particular case. Corey v. Kocer, 193 N.W.

2d 589, 596 (S.D.1972). Thus the pertinent facts must be analyzed. The Snodgrass vehicle is on the far left side of the highway. There is sufficient room between their vehicle and the stalled trucks for a car to pass between without any impact. Mr. Nelson, by his own testimony, stated that he perceived this situation when he was 400 to 500 feet away coming over the hill. Yet in the period of time the Nelson car traveled this lengthy distance, Mr. Nelson did not have sufficient control over his car to either stop, put it in the ditch, or pass between the vehicles and thus avoid the collision which resulted in the death of Michael Snodgrass. Mr. Nelson had traveled this stretch of road that morning on his way to work. He knew the icy condition of the road. Under these circumstances the only conclusion this Court can reach is that Wayne Lee Nelson's negligence, when compared with the negligence of the plaintiff or the plaintiff's decedent, is greatly more than slight.

The next issue this Court will determine is the role played by the three truck driver defendants, Mr. Ramey, Mr. Shows and Mr. Benjamin, employees of defendant Seminole Transport Lines, Inc. and Petroleum Carriers, Inc. in this tragic event. This Court finds, for the reasons set out below, that the truck drivers and thus their employers, were not a "proximate cause" of the accident and thus the plaintiff's request for damages against them must be denied, as is Wayne Lee Nelson's cross claim for contribution and indemnity as against these defendants.

■ ■ Much argument was heard by this Court concerning the constitutionality of the adoption by the state of South Dakota of certain Interstate Commerce Commission Regulations and thus the violation of such would be negligence as a matter of law. This Court, without deciding this issue, but assuming for

---

1. The above is not intended to exhaust all instances and ways the parties were negligent but is only meant to illustrate the problems facing the Court and the reasoning used by it to decide this issue.

purposes of this decision that such regulations were in effect, finds that even if the regulations were in force and thus the rule of negligence as a matter of law would apply, damages still will not be awarded to the plaintiff. In order for a plaintiff to recover for the negligence of another, such negligence must be the proximate cause of any injury to the plaintiff. In this case, the fact of the presence of the stalled trucks was nothing more than a condition by which the subsequent independent acts of the plaintiff and plaintiff's decedent and Wayne Lee Nelson produced the injury. "The existence of such a condition was not the proximate cause of the injury to plaintiffs." Norman v. Cummings, 73 S.D. 559, 561, 45 N.W.2d 839, 841 (1951).

This same reasoning applies to any common law duty establishing a standard of care for these truck drivers under these conditions. This Court does find, however, that no such common law duty was violated. These truckers did everything under the circumstances that a reasonably prudent person would do to insure the safety of other individuals on the highway.

Thus, as no casual connection exists as between the injury and these defendants' negligence, if any, the plaintiffs' claim for damages against these defendants must be denied. This reasoning also pertains to Mr. Nelson's claim for contribution and indemnity as against these defendants under the theory of joint tortfeasors. Thus this claim also fails as this Court finds that the sole, contributing cause of any injury to the plaintiff was caused by the negligence of Mr. Nelson, along with any contributory negligence of the plaintiff or the plaintiff's decedent, which will be discussed later.

Constance Snodgrass was also joined in this action as a Third Party Defendant by Mr. Nelson, who alleged that should he be held liable, that there be contribution as against the said Constance Snodgrass. For the reasons set forth above, it is obvious that such claim for contribution by Mr. Nelson will be denied.

Thus the only issues left to be determined by this Court involve the main participants in the accident—Constance and Michael Snodgrass and Wayne Lee Nelson.

The first problem is whether or not the negligence of Constance Snodgrass in the operation of the Snodgrass vehicle is imputed to the deceased, thus barring his recovery. For the reasons which will be discussed below when the Court resolves the contributory negligence issue, this Court finds that whether or not such negligence is imputed to the decedent is not deserving of much discussion, for even if such negligence is imputed to the deceased, such negligence will not bar his recovery if this negligence is found to be slight when compared to the negligence of the defendant.

The next issue to be resolved is that of assumption of a known risk by the plaintiff and plaintiff's decedent raised by the answer of Mr. Nelson. In order for one to assume a risk there must have been a voluntary acceptance thereof. Such acceptance requires knowledge and appreciation of the risk. One's knowledge and appreciation of the risk must either be actual or the risk so plainly observable that the person must be presumed to have had actual knowledge and appreciation thereof. Bartlett v. Gregg, 77 S.D. 406, 409, 92 N.W.2d 654 (1958). In determining whether this defense applies, a quote from Prosser on Torts is extremely helpful wherein Prosser states: ". . . the courts have arrived at the conclusion that assumption of risk is a matter of *knowledge* of the danger and intelligent acquiescence in it, while contributory negligence is a matter of some fault or departure from the standard of reasonable conduct . . . ." Prosser on Torts, 2d Ed. § 55, p. 305 (emphasis added). This Court finds that while the defense of contributory negligence may apply, which will be discussed below, the defense of assumption of risk is not applicable to this set of circum-

stances. The plaintiff and the plaintiff's decedent did not know and appreciate the risk involved upon deciding to attempt to pass the stalled trucks. The testimony which best illustrates this finding by this Court is the fact that both Constance and Michael Snodgrass, in deciding whether or not to attempt to pass the stalled trucks, felt that should a car approach from the other direction it would have sufficient room to pass between the stalled trucks and the Snodgrass vehicle. This certainly is not the appreciation of a known risk necessary for the defense of assumption of a known risk to be applied. The plaintiff and plaintiff's decedent did not know or assume that a car would be coming from the other direction at such a speed that its driver would not be able to control it and pass between them and the trucks.

Thus the Court is left with the final issue of contributory negligence. As stated earlier, no rule of thumb is to be followed in applying the contributory negligence defense, each case must be decided on its own facts. Corey v. Kocer, supra. Thus Court, after having carefully considered all the facts and circumstances of this case, finds that any negligence of the plaintiff or the plaintiff's decedent was slight when compared with the negligence of Wayne Lee Nelson. In this case, Constance and Michael Snodgrass and their passenger pulled up behind two stalled trucks in an extremely bad South Dakota blizzard. They were faced with the problem of what to do. They had but three alternatives—turn around and go back the way they had come, remain where they were, or attempt to pass the trucks. While they were making their decision, several other vehicles successfully passed the trucks and they decided to try to do so themselves. They then proceeded to make this attempt, negotiating their vehicle as far to the left side of the highway as possible, leaving 12 to 15 feet between them and the trucks. The Court finds this negligence to be slight when compared with that of Mr. Nelson who saw this situation from a distance of 400 to 500 feet away and was traveling at such an excessive rate of speed under the circumstances that he was unable to sufficiently control his vehicle and pass between the trucks and the Snodgrass vehicle or put his car in either ditch, or even to be able to stop his vehicle in the 400 to 500 foot distance so as to avoid the collision. Mr. Nelson clearly knew the bad condition the road was in as he had passed over this same spot in the road that morning on his way to work.

The final issue is thus the amount of damages to be awarded. Under South Dakota law "[I]n every action for wrongful death the jury may give such damages as they may think proportionate to the pecuniary injury resulting from such death to the persons respectively for whose benefit such action shall be brought." S.D.C.L. 21–5–7 (1967). There was a substantial amount of testimony solicited at the trial concerning the ambitions and goals of Michael Snodgrass. The only conclusion which can be reached is that Michael Snodgrass was a very ambitious and level-headed young man who desired to be a teacher and coach upon completion of his college education. There was considerable testimony as to what the future earning capacity of the decedent would be in his chosen field. A Doctor Ralph Brown, a professor of economics at Northern State College, Aberdeen, South Dakota, testified as to what prospective teachers and coaches would earn in a lifetime with a life expectancy of 46.7 years, such as could be assumed for Michael Snodgrass. His estimate was that Michael would have earned approximately Eight Hundred Fifty-six Thousand, Eight Hundred Thirty-one Dollars ($856,831.00) as a teacher figuring in an annual increase of 5.5 % to the present average base salaries given to teachers. Dr. Brown, after adjusting this figure for the fringe benefit of social security payments, for personal consumption by the deceased, and a 4% discount rate, ended up with the present value figure of Three Hundred Five Thousand, Five Hundred and Eighty-

nine Dollars ($305,589.00). Dr. Brown's present value figure for a teacher-coach, using the same computations, came to an amount of Three Hundred Twenty-six Thousand, Nine Hundred Nineteen Dollars ($326,919.00).

This Court, in adjusting Dr. Brown's computations for their somewhat speculative value,[2] and considering all the other elements of damage as required by South Dakota law, and reducing the damages slightly in proportion to the amount of contributory negligence of the plaintiff and the plaintiff's decedent as required by S.D.C.L. 20–9–2 (1967), awards damages to the plaintiff in the amount of One Hundred and Fifty Thousand Dollars ($150,000.00), together with her costs.

This Memorandum Decision shall constitute the Court's findings of fact and conclusions of law. The prevailing party shall prepare the necessary judgment to effect the foregoing decision by the Court.

---

2. This Court finds Dr. Brown's computations to be somewhat speculative based upon the fact that Michael Snodgrass was still a student. Although every appearance would seem to indicate that he would have finished his education, the fact still remains that he had not done so.